O. C. Pinney and G. C. Hanson, for Elder Wilcox.

---

(Lucas Co., O., Common Pleas.)

(June, 1896.)

WALTER PLESSNER v. JOHN L. PRAY et al.

Public officials are elected by the people and are entrusted with certain discretion, and it is not the business of the court to interfere with that discretion, unless there has been a clear abuse of their legal power, or a gross disregard of the proper exercise of their discretion. But where the court has doubt whether the action of the county commissioners is illegal, it will not interfere.

Sects. 782 to 793 R. S. inclusive, relate to buildings and improvements being constructed by the state, and have no necessary reference to anything being done by the county commissioners.

Secs. 794 to 803 R. S. apply to buildings and improvements being erected by the county commissioners. But the court considers it doubtful whether an elevator in a court house is such a building or improvement as is meant by these sections of the statutes, and therefore where the work of constructing such elevators in the court house has been let by the county commissioners by private contract, although it amounts to more than $1000, the court will not interfere with the action of the commissioners.

---

PRATT, J. (orally).

Last night I examined this matter, so far as I had time to do so, it being an application for a preliminary injunction against the board of commissioners of Lucas county. It is perhaps one of the misfortunes of the position which a judge occupies, that he is frequently called upon to decide important matters like this with very little opportunity for examination; and, where the point is one which involves the action of public officers, in the performance of their official duties, it is very important that the court should not overstep the lines of its proper jurisdiction. These public officials are elected by the people and are entrusted with certain discretion, and it is not the business of the courts to interfere with that discretion, unless there has been a clear abuse of their legal power, or a gross disregard of the proper exercise of their discretion. In a case which has been referred to by counsel, Commissioners v. Pargillis, 10 Circuit Court Rep., 376, and which is perhaps the controlling case so far as the matter now before me is concerned, Judge Haynes says on page 387: "Courts are to exercise certain judicial powers, and generally speaking, they are well known and understood; and county commissioners have certain powers, and those powers are vested in no other body. The courts cannot reach or control them in the exercise of the power conferred upon them, as I understand the law, unless by some act the commissioners have brought themselves within the judicial cognizance of the courts, as, for instance in matters of fraud.

"The courts have a right under the statute, where officials are proceeding to make an illegal contract, to interfere and enjoin. Possibly they have the right to some extent to interfere" where there is a gross abuse of power, etc.

These are general principles, well understood by every lawyer; and, in the hasty examination which I have been able to make in this case, it has been made with a view to observing these lines of demarkation between the powers of the court and the powers of the commissioners. The statutes pertaining to this matter come frequently under the cognizance of the courts and

lawyers. I have had frequent occasion to examine them, in the course of practice, but still find that every time a lawyer looks at them he has got to go over them anew and as though he had never seen them before. They are lengthy and complicated in their provisions, and the question is, what do they exactly mean and what is their intent? In the arguments, I have been referred especially to secs. 794, 795, 799, 785 and 851. Section 785 is relied upon strongly, by counsel for the plaintiff. It follows, and as I read it, has reference to sect. 782 and 784, which plainly relate to improvements when a public building is being erected by the state, not having any reference to county commissioners and their duties If you should take out from these sections some particular expressions, it would be easy to infer and apparently prove that I am wrong in this view; but, to look them all through and examine them one in connection with another, I think it is fairly conclusive that secs. 782 to 798, inclusive, relate to buildings and improvements being constructed by the state, and certainly have no necessary reference to anything being done by the county commissioners.

Sections 794 to 803 apply to buildings and improvements being erected by the county commissioners. That is not the general county commissioners statute, but it has a special class of sections providing for buildings being erected by county commissioners and the purchase of materials, etc. These last sections are all intended to be embraced in an act passed in the year 1888, which repealed these old sections and amended sections, and was followed up by a section which was not put into the revision of 1890, as though it were a matter of no importance; but it was a general section, known as sec. 2, though I do not think it cuts any figure here, which says that these sections shall apply to all buildings. I presume the revisers supposed that was sufficiently expressed in the statute itself.

The question here is, whether this work—the building of these elevators for this building—comes within the restrictive provisions of these sections; especially section 798, which requires that in all contracts amounting to a thousand dollars, there shall be plans and specifications provided and bids advertised for for the period of four weeks before the letting of the work.

Now we have a decision by our own circuit court in the case to which I have referred, from Wood county; and, when our circuit court speaks—as I had occasion recently to remark in another case—it is the business of this court simply to follow it, and if this court commits an error and does not understand what the circuit court has decided, it is proper for the aggrieved party to go to that court and get it corrected.

In the Wood county case, Commissioners v. Pargilis, supra, the thing which was being put into the courthouse, which they were building under the power granted to them by a special act, passed in the same year as our special statute—differing from it in some respects, but, so far as the power to erect a courthouse is concerned, although vested in a different sort of a body, containing simply the general provisions and thus both are presumed to be subject to the general provisions of the statute. In that case, the court was troubled with a great many questions which, happily, we do not have here. But the question as to whether it was necessary to advertise for the furnishing of the heating apparatus, claimed in that case, and the question made in this case as to whether there is a limitation upon the commissioners in the letting of a contract for these elevators, involve the same principle and refer to the same class of matters, both being mechanical contrivances or apparatus or improvements, and it is not important, perhaps, to inquire whether they are controlled by patents or controlled by particular individuals, or particular firms, and as to which it may be utterly impossible that there shall be competition. This is a matter that has been discussed frequently by different courts. I have not looked up the subject now, but have been over it heretofore—as to whether there can be

competition. Of course, the patent laws are expressly made for the purpose of giving rights to certain parties that are exclusive, and exclude competition; and that is true, in a commercial sense, with a great many concerns that are manufacturing different mechanical contrivances, where it is a matter of common knowledge that they rely upon the fact that they make them and that no one else can compete with them.

In the case in Wood county, supra, there had been no attempt to comply with those provisions of the statute. In this case, there was an apparent compliance with the provisions of this statute, supposing, or at least reading it as coming within the provisions of the statute; but, after the bids were in, they were all rejected and the bids returned—of course I take it that the allegations of the petition are true in these matters, because they stand upon the petition— the bids were returned to the respective parties and the situation was the same as though there never had been any bids made or any advertisement, and it stands, so far as the principle is concerned, exactly upon the same ground as the Wood county case, and the circuit court, so far as these cases are concerned, disposes of the matter that we have here in question in two paragraphs, and brief ones at that, on page 388. It is unnecessary to wade through this long opinion of Judge Haynes, for the reason that he is dealing with a troublesome question arising from the fact that the discretion there was the particular action of the commissioners in that case, and he says: "It is said here that the county commissioners are acting illegally in this matter, in that they are proceeding to award the contract without advertising for bids, without calling for competition, and without making certain specifications, plans and drawings.

"We have examined the sections of the statutes 794 and 795, and the others to which we have been referred, and are unable to come to the conclusion that those statutes apply to this contract or this work, and we cannot

therefore, as at present informed, interfere with the action of the county commissioners in this regard."

Now the court in that case take the position, which is sustained in all our notions as to injunctions interfering with the discretion of public officers, that in order to entitle a party to enjoin an act of public officers, it must be clear that the act comes under one of these three heads:

1. That they are proceeding in violation of the limitations provided by the statutes. When that clearly appears, of course the court has nothing to do but to perform its duty, regardless of consequences; because these limitations are provided to govern them, and the legislature is the supreme and sole authority in determining the necessity or making these limitations.

2. Where there is a gross abuse of the discretion, and where the court is satisfied from the evidence that there has been a gross abuse of the discretion conferred upon the county commissioners.

3. Where there is fraud on the part of the commissioners.

This last ground always gives the court jurisdiction. And the courts are required to be vigilant in detecting and thwarting every effort at favoritism, or at the existence of any such things as "rings," or anything that looks like the favoring of one man above another; for the reason that it is necessary; and the legislature has made it necessary, to tie up these parties with restrictions, and the court will have a keen eye for anything that looks like favoritism.

Now, in this case, there is no charge whatever of any favoritism; it is simply charged, in substance, that the bids were all rejected and the matter left open, and that now the county commissioners have determined that it is for the best interest of the community to let a contract, as is alleged, for a thousand dollars more than other parties are willing to do the work for, equally good—I am not quoting from the petition, but giving the substance of it.

This matter being turned over to me

last evening, I have not had an opportunity to look up the authorities anew, but I once made a very full brief in the question where I was proceeding against the waterworks board of this city, and in looking this brief over, I find no case cited there that comes anywhere nearer than the case, American Clock Co. v. Commissioners, 31 Ohio St., 415, where there was a proposal made for a tower clock of a certain number, or something equal, not equally good, that is not the wording of the decision, but that is the idea —something equal as a mechanical contrivance. The action was one for a mandamus by the American Clock Co., and the Howard Clock Co. had bid for one of these clocks, within the provisions of the notice, while the American Clock Co. had proposed to put in one which they said was equally good, and they sought to compel the acceptance of their bid by the commissioners, because they had bid lower for the tower clock; but the court refused their mandamus (it was a mandamus, and not an injunction), and it raised, of course, the question there about which it was proposed to give evidence here yesterday; whether the commissioners had properly exercised their discretion in rejecting the bid where it provided that the article to be furnished was equally good, and I think that case, while not entirely within this case, throws some light upon it, and in these matters of injunction, while the court is not required or permitted to exercise the discretion of the commissioners, still if the court cannot see that better competition would be brought about by advertising, the court will simply keep is hands off—that is, that would be one reason why it should keep its hands off.

So far as this case is concerned, while the petition has been drawn based upon this Pargilis case, and brings itself within some of the expressions used by Judge Haynes in his opinion, I think these two clauses in the opinion are applicable to this case, and I simply adopt them as the conclusion I have come to here, that is, that upon examination of these sec-

tions 794 and down to and including 798 and 799, and so down to 802, perhaps, I am unable to come to the conclusion that these statutes apply to contracts for this work. Under the state of the statutes, it is a matter not without some doubt, but I will not grant an injunction against public officers, being in doubt whether they are right or not. I think I should be travelling beyond my province in doing so, and adopting the exact language of Judge Haynes, which it is my duty to follow, I will simply say in this case that I am unable to come to the conclusion that there is any illegal exercise by the officials of their power in this case, there being no charge of fraud or charge of any gross abuse of their discretion, and, without using more time, I refuse to grant the injunction.